[Civ. No. 17323.   First Dist., Div. Two.   Sept. 11, 1957.]

TERRY KLINE, a Minor, etc., Respondent, v. J. C. PENNEY COMPANY (a Corporation), Appellant.

Campbell, Custer, Warburton & Britton, Frank L. Custer and W. R. Dunn for Appellant.

Boccardo, Blum, Lull, Niland & Teerlink and Edward J. Niland for Respondent.

BRAZIL, J. pro tem.*—Six-year-old plaintiff Terry Kline prevailed before a jury in an action for damages against defendant J. C. Penney Stores. From the judgment, after denial of its motion for a new trial, the defendant appeals.

The child injured his hand one day when he was in the store with his mother and sister who were interested in buying some clothes. While they were thus preoccupied, Terry went over to the end of the escalator on the second floor, and while playing around there got his hand caught in the opening where the continuous hand rail of the escalator returns through the floor. Around the aperture are stiff bristles, dark in color, which effectively keep anything larger than a ruler from going through the hole. The bristles are all around the returning hand rail and actually come in contact with it. The child was putting his hand on the moving rail and following it down, stooping to do so; in momentarily looking away, his hand got "sucked" into the opening; and it was badly lacerated. A section manager of the defendant store quickly stopped the escalator by pressing a button, and he got the child's hand out by reversing the escalator with a key he regularly carried.

The escalator had been in use for about five years without any material change. There was evidence that other children

---

*Assigned by Chairman of Judicial Council.

had on previous occasions gotten hurt in much the same way as Terry, and employees had knowledge of several such instances. They also had knowledge that children had used the same place to engage in play while those who should have been watching them were busy shopping.

Appellant does not include insufficiency of the evidence to support the judgment as one of its grounds of appeal. Its claims of error in short form are these: (1) the amount sued for was below the jurisdiction of the superior court, (2) two faulty instructions, (3) misstatement of evidence by plaintiff's attorney in his argument, concurred in by the court, and (4) denial of a fair trial because of conduct of plaintiff's attorney.

■ The defendant's claim that the superior court had no jurisdiction to try the case is based on what took place before the jury was sworn. The record discloses: ''Mr. Teerlink: The other matter, your Honor, would be the question of plaintiff[s] moving to amend their prayer for damages from the sum of $20,000 general damages down to the sum of $3,000. The Court: Of course, the motion will be granted. . . . Mr. Custer: Wait a minute. Now, is this in the jurisdiction of the Superior Court? Mr. Teerlink: Three thousand plus specials. All right, three thousand and one dollar, Judge. The Court: All right. Motion granted.'' And that's all there was said about it until the point shows up in appellant's opening brief. The case was tried, argued and decided with concurrence of all on the obvious basis that the prayer of the complaint was amended to $3,001 and not $3,000. The first statement of the trial judge in response to the attorney's statement of his desire about the amount of the prayer is in the future tense; his second statement was the order which reduced the amount of the prayer. The conduct of the parties thereafter supports this interpretation.

The two instructions which appellant claims were erroneously given, the emphasis being that of appellant and not of the trial court, are as follows:

''Proprietors of premises who invite children on them must use *care* to keep them reasonably safe, *not omitting precautions* against injury from childish impulses. This doctrine is but one phase of the *wider* doctrine that an owner *must* keep his premises reasonably safe for the use of the people whom he invites to come on them, an application of the *general* doctrine with special references to the nature of children, and in accordance with the principle that what constitutes due care in a

given instance depends on the degree of the danger to be apprehended. Because children are more heedless and have less discretion in capacity to avoid danger than adults, *more* care must be exercised by others for their safety.''

''Ordinarily it is necessary to exercise *greater caution* for the protection and safety of a young child than for an *adult person* who possesses normal physical and mental faculties. When dealing with children, one must anticipate the ordinary behavior of children. The fact that they usually cannot and do not exercise the same degree of prudence for their own safety as adults, that they are often thoughtless and impulsive, imposes a duty to exercise a *proportional* vigilance and caution on those dealing with children, and from whose conduct injury to a child may develop.''

The appellant in its opening brief makes this statement: ''Concededly, the defendant had knowledge that children playing at the place might be injured, either by inserting their hands or fingers between the brush and the handrail or by holding onto the handrail while looking elsewhere and having a hand drawn into the aperture. Such was the danger to be apprehended and defendant owed the duty to exercise ordinary care to avoid such an injury, and, in that 'ordinary care' would be care commensurate with the danger.''

Before considering appellant's objections to the two quoted instructions, it is well to note that these were not all that was said by the trial judge in his charge to the jury on the subject of negligence, duty or proximate cause. Negligence, proximate cause, ordinary care were all properly defined. The jury was told that defendant was not an insurer or guarantor; that no inference of negligence arose from the mere happening of an accident; that the only duty imposed on the defendant in this case was to use ordinary care to keep the premises reasonably safe for the plaintiff; that, if the defendant should have known in the exercise of ordinary care that the escalator may cause injuries to minor children, it had the duty to take whatever precautions ordinary care would dictate to protect invited children from such an instrumentality. An instruction on unavoidable accidents was also given.

The first instruction complained of is taken verbatim from the text of *Kataoka* v. *May Dept. Stores Co.*, 60 Cal.App.2d 177 at 184 [140 P.2d 467], which case also involves a small child who got his hand caught in an escalator while playing around unobserved, when his mother was busy shopping. While it may be true that ''it is a dangerous practice,

and one not to be followed, to take excerpts from opinions of the courts of last resort and indiscriminately change them into instructions to juries," (*Sloan* v. *Stearns,* 137 Cal.App.2d 289 at 300 [290 P.2d 382]) it does not follow that it is error to do so. This quotation is not an indiscriminate use of an excerpt from a decision, but one that appears applicable to a substantially similar set of facts. Without the aid of appellant's italicizing, it isn't easy to find out just what is wrong with it. If it takes a lawyer a studied effort to even grasp the subject of appellant's complaint, it is apparent that 12 lay jurymen are not going to discern the fine spun differences between this instruction and what appellant would concede to be a correct one on the subject by hearing it read once or twice in a courtroom.

What has just been said of appellant's complaint of the one instruction is generally applicable to the other. We are of course more concerned with the wording of an instruction as it is ordinarily understood and comprehended by lay members of a jury, rather than with a technical meaning that can be demonstrated by an astute brief writer who has all the time in the world to dissect the instruction word by word.

■ "The known characteristics of children, including their childish propensities to intermeddle, must be taken into consideration in determining whether ordinary care for the safety of a child has been exercised under particular circumstances. [P. 297] . . . The childish propensity to intermeddle was the characteristic which appellant should have taken reasonable precautions to guard against. [P. 301.]" (*Crane* v. *Smith,* 23 Cal.2d 288 [144 P.2d 356]—action against market by small child, a business invitee, who got her hand in a coffee grinder.)

■ Referring to the Kataoka and Crane cases, *supra,* it is said in *Roberts* v. *Del Monte Properties Co.,* 111 Cal.App. 2d 69 at page 74 [243 P.2d 914]—"They are based on the general principle that the person in possession of premises must take such precautions for the safety of his business invitees as are reasonable under all the circumstances, considering their relation, the burden of the interference with his own affairs and the danger to the invitees to be anticipated, and that special caution is required in behalf of invitees of immature age whose inability to appreciate and propensity to ignore certain dangers he ought to consider."

There is actually little or no substantial difference between the admittedly correct rules quoted from the Crane and

Roberts cases, and that which was told the jury in the two instructions about which appellant complains. It is manifest that the result would have been the same if every correction indicated by appellant's italicizing had been made before being read. The jury heard one of the instructions once, the other twice; the appellant has apparently read and reread them from the transcript, and, with the advantage of that close study which the jury, trial judge and trial counsel did not have, has found some minor inaccuracies. No more need be said on this subject.

Appellant's points (3) and (4) being of the same general nature may be discussed and disposed of together. Appellant complains of misstatements of fact by plaintiff's counsel in his argument to the jury, of reference to availability of safety devices about which no testimony was given (plaintiff's attempt to prove this blocked by objection), and of being called a billion dollar corporation in plaintiff's argument to the jury. The jury was told by the court that the jury were the judges of the fact that statements of the attorneys were not evidence and the attorneys were admonished to stay within the record and not to argue matters not introduced in evidence. The plaintiff's attorney reminded the jury that what he said was not evidence, that the jury must depend on its own recollection of the evidence and not on what he said it was. The error, if any, in referring to the existence of safety devices was invited by appellant's attorney for it was he who first made reference to the matter when he told the jury that the respondent did not bring anyone to show that such device existed.

The reference to the defendant as a billion dollar corporation was made only once, and surely that rhetorical exaggeration could have had no influence on the result for most everyone knows without being told that J. C. Penney Company is a large corporation though not nearly that big. All these matters concerning the conduct of the trial were passed upon by the trial judge upon appellant's motion for new trial. The trial judge was in a far better position to determine whether or not appellant's rights were at all affected or prejudiced as a result of these things which appellant says justifies a reversal of the judgment. The order denying a new trial indicates the trial judge believed the appellant had a fair trial; and we believe the record supports him in that finding. The trial was a very short one, there were very few witnesses, and the jury were allowed to inspect the premises which were in the same condition as they were when the accident occurred.

The judgment was for only $1,000, and appellant had judgment on the parent's cause of action for special damages, all of which indicates that the jury reached its conclusion conscientiously and without bias, unswayed by all the little things which appellant claims affected the verdict.

Judgment affirmed.

Dooling, Acting P. J., and Draper, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 5, 1957.