453 P.2d 366

**Viola Holland ECK, Appellant,**

**v.**

**HELENE CURTIS INDUSTRIES, INC., Appellee.**

**No. 1 CA–CIV 555.**

Court of Appeals of Arizona.

April 9, 1969.

Rehearing Denied May 6, 1969.

Gorey & Ely, by Herbert L. Ely and Jeffrey D. Bonn, Phoenix, for appellant.

Struckmeyer & Davich, by James A. Struckmeyer, Phoenix, for appellee.

CAMERON, Judge.

This was an action in the trial court instituted by the plaintiff, Mrs. Viola Eck, for chemical burns received from a permanent wave solution. The jury returned a verdict in the amount of $10,000 in favor of the plaintiff against the owner of the beauty shop and the employee who applied the solution. The jury also found in favor of the manufacturer, Helene Curtis Industries, Inc. and Empress Beauty Supply Company, the supplier. From the judg-

ment and the denial of plaintiff's motion for new trial plaintiff appeals as to the defendant Helene Curtis only.

We are called upon to determine whether the trial court erred in refusing to give plaintiff's requested instructions based upon the theories of express and implied warranties.

On 1 April 1968, Mrs. Eck went to the Hollywood Beauty Shop which was owned by Mrs. Smagacz for the purpose of obtaining "an end permanent". She told the beauty operator, Mrs. Ames, that she "wanted a Helene Curtis Creme Cold Wave" which was "on special". Mrs. Eck testified that while she was taking the permanent she complained, about four different times, that it was burning her head and hurting. Mrs. Ames' alleged reply to the complaints was that it probably was rolled too tight. On at least one occasion Mrs. Ames either moved a curl or loosened one.

Mrs. Ames was given a ride home by Mrs. Eck who again complained about the burning. Shortly afterwards, while on her way to the restaurant which she owned, she related:

"It got so it was burning so bad that I got down in an irrigation ditch and put my head in a canal. * * * I went on a little further, and my head was on fire again, so I stopped at a service station, and the water where they fill radiators, I come and I pulled up and got out and stuck my head under that, and run water all over my head and kept it there until it cooled off. I didn't go into the rest room. I went straight home."

On the following day Mrs. Eck was treated by a doctor for chemical burns to her scalp. That same day she returned to the Hollywood Beauty Shop to show Mrs. Smagacz her hair and to warn her not to use it on anyone else. From that time until the trial, some eight years later, Mrs. Eck received medical attention relating not only to her scalp but also to various other ailments which plaintiff asserts were the result of the permanent wave solution.

Mrs. Eck's original complaint alleged negligence. This was later amended to include, as Count II, an allegation of breach of warranty. The plaintiff timely requested instructions on express warranty as to the defendant Helene Curtis, and implied warranty of fitness and of merchantability as to all the defendants. These instructions were denied by the trial court and the jury was instructed on "products" or "strict torts liability" only. We are called upon to determine whether the trial court erred in denying plaintiff's request to instruct on warranty in addition to products liability.

Our courts have adopted the legal concept of "products" or "strict torts liability" as to manufactured products, O. S. Stapley Company v. Miller, 103 Ariz. 556, 447 P.2d 248 (1968). This liability is not by agreement but imposed in law and sounds in tort. Shannon v. Butler Homes, Inc., 102 Ariz. 312, 428 P.2d 990 (1967). We believe that the trial court correctly instructed the jury in this case regarding products liability. Other than foods and drugs, we can conceive of few products wherein the doctrine of products liability should be more applicable. Garthwait v. Burgio, 153 Conn. 284, 216 A.2d 189 (1965). See also Annotation at 13 A.L.R.3d 1057 and 79 A.L.R.2d 482.

Plaintiff contends that in so instructing the jury regarding products liability it was error for the trial court to state:

"Proof that the product was defective or harmful in some way is necessary to recover in this type of case."

We do not believe this was error. Regardless of the theory of the case, proof that the product caused the injury is indispensable. Rexall Drug Co. v. Nihill, 9 Cir., 276 F.2d 637, 79 A.L.R.2d 419 (1960); 7 Arizona Law Review 263 (1966); Nalbandian v. Byron Jackson Pumps, Inc., 97 Ariz. 280, 399 P.2d 681 (1965); Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57,

27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049 (1962). Note § 15, 79 A.L.R.2d 447. Essex Wire Corp. of California v. Salt River Project, 9 Ariz.App. 295, 451 P.2d 653, filed 13 March 1969.

Plaintiff's main thrust on appeal, however, is that it was error to refuse plaintiff's requested instructions on express and implied warranties. The law generally is that the jury should be instructed on the theories of the case finding reasonable support in the evidence, Fibreboard Paper Prod. Corp. v. East Bay Union of Mach., 227 Cal.App.2d 675, 39 Cal.Rptr. 64 (1964), and it is not error to give an instruction regarding two different theories of the case:

"Considering the direct and circumstantial evidence together, the jury was warranted in finding liability on either theory. The evidence indicated they were reasonable probabilities. Since plaintiff's instructions submitted both theories available to her, the instructions granted her and complained of by defendant were correctly given by the circuit court." Mississippi Winn-Dixie Supermarkets v. Hughes, 247 Miss. 575, 156 So.2d 734, 738 (1963).

Regarding the request for instruction on breach of express warranty we have no difficulty for the reason that the evidence in the trial court was not sufficient to show that plaintiff relied upon any advertising or inducement advanced or published by Helene Curtis to use their product:

"* * * a manufacturer's liability for breach of express warranty regarding a cosmetic or similar product may arise out of statements made by the manufacturer in his advertisements of the product." 79 A.L.R.2d 446.

Neither do we have any difficulty affirming the trial court's decision in refusing to give the requested instruction on implied warranties. This Court has stated:

"Although A.R.S. § 44-215 of the Uniform Sales Act, relating to implied warranties of quality arising under the law of contract, is pleaded, we feel it is not applicable. Since the pogo stick was purchased by the plaintiff's mother for her son Ricky, no privity exists between plaintiff and defendant." Bailey v. Montgomery Ward and Company, 6 Ariz.App. 213, 215, 431 P.2d 108, 110 (1967).

Even though implied warranty of merchantability and implied warranty of fitness are two different theories and in proper situations the court could instruct on both, Davidson v. Wee, 93 Ariz. 191, 379 P.2d 744 (1963), the privity requirement as to both theories applies in Arizona.

Judgment affirmed.

DONOFRIO, C. J., and STEVENS, J., concur.