778 P.2d 1227

**Don W. DREW dba Drew Livestock, Plaintiff/Counter-defendant, Appellant/Cross Appellee,**

**v.**

**UNITED PRODUCERS AND CONSUMERS COOPERATIVE, Defendant/Counter-claimant, Appellee/Cross Appellant.**

**No. CV–88–0417–PR.**

Supreme Court of Arizona,
En Banc.

Aug. 1, 1989.

Jennings, Kepner & Haug by Alicia F. Tocco, Mark R. Santana, Phoenix, for plaintiff/counter-defendant, appellant/cross appellee.

Gallagher & Kennedy by Kevin E. O'Malley, Zora Stevanovich, Phoenix, for defendant/counter-claimant, appellee/cross appellant.

FELDMAN, Vice Chief Justice.

Don W. Drew, dba Drew Livestock (Drew), petitioned this court to review a memorandum decision of the court of appeals. Drew maintains the court of appeals erred by classifying his action against United Producers and Consumers Cooperative (United) as a products liability action rather than an action for economic damages under the Uniform Commercial Code (UCC). Consequently, Drew contends, the trial court erred by applying the wrong statute of limitations and dismissing his complaint. We granted, in part, Drew's petition for review and have jurisdiction. Ariz. Const. art. 6, § 5(3); A.R.S. § 12–120.24; Rule 23(a), Ariz.R.Civ.App.P., 17B A.R.S.

## FACTS AND PROCEDURAL HISTORY

Because the trial court dismissed Drew's complaint, we accept as true the allegations it contains. *See Large v. Superior Court,* 148 Ariz. 229, 231, 714 P.2d 399, 401 (1986).

Drew is in the business of breeding sows and producing feeder pigs.[1] Because the feeder pigs are eventually sold, the profitability of Drew's business depends on the number of feeder pigs each sow produces. From November 17, 1981 through January 1982, Drew desired to purchase lactation and starter feeds for his pigs from United, a cooperative engaged in the business of selling feeds. The lactation and starter feeds differ from other pig feeds because they contain added nutrients and medications necessary for the good health of lactating and feeder pigs. Prior to making the purchases from United, Drew met his feed requirements by purchasing from one of United's competitors. Drew contracted

---

1. A pig is a feeder until it weighs forty pounds.

with United only after obtaining an express warranty from United that its feeds would contain the same nutrients and medication found in the feeds Drew previously purchased from United's competitor.

Pursuant to their arrangement, United began delivering the feed to Drew. Unfortunately for Drew and the pigs, however, the feed did not contain the promised nutrients and medication. Due to the absence of nutrients in the lactation feed, some sows stopped producing milk and lost weight after consuming United's feed; consequently, some piglets died. Because the starter feed did not contain the anticipated medication, many of the feeder pigs contracted scours, required daily medication, lost weight, and some died.

On June 18, 1984, Drew filed his complaint alleging, in separate counts, breach of express and implied warranties and a racketeering claim as defined in A.R.S. § 13–2301(D)(4)(t). The complaint alleges that the breach of the express and implied warranties was the proximate cause of the injuries to the pigs. We note Drew's complaint does not contend that the feed itself was defective and unreasonably dangerous such that it harmed the pigs. Nor does the complaint seek damages for the death of the pigs per se. The gist of the complaint is that the otherwise nonobjectionable feed did not contain the additives intended to have a salutary effect on the pigs. The complaint does not expressly demand damages for loss or destruction of property nor

for commercial or economic losses. The prayer for relief simply asks for damages, without specifying the type, in an amount to be proven at trial, plus costs, reasonable attorneys' fees, and other relief the trial court might deem appropriate.

United answered by denying the allegations and by filing a counterclaim for monies Drew owed it under the contracts for the feed. Then, some two years after Drew filed the complaint, United moved to dismiss, arguing that the action was a products liability claim as defined in A.R.S. § 12–681,[2] and thus barred by the two-year statute of limitations of A.R.S. § 12–542. *See* A.R.S. § 12–551.[3] Drew argued that the action was for economic damages based solely on breach of contract and, thus, the four-year statute of limitations found in the UCC applied. *See* A.R.S. § 47–2725(A). Finding that Drew's complaint stated a products liability claim, the trial court granted United's motion to dismiss, gave it judgment on Drew's complaint, and awarded United its costs. Pursuant to Rule 54(b) of the Arizona Rules of Civil Procedure, the court directed entry of final judgment on the complaint and stayed all further proceedings on United's counterclaim.

By memorandum decision, the court of appeals affirmed the trial court's dismissal of Drew's complaint. *Drew v. United Producers & Consumers Cooperative*, No. 1 CA–CIV 9615, memorandum decision (Ariz. Ct.App. July 21, 1988).[4] Relying on *Gates*

---

**2.** Section 12–681(3) defines a products liability action in the following terms:

> [A]ny action brought against a manufacturer or seller of a product for damages *for bodily injury, death or property damage* caused by or resulting from the manufacture, construction, design, formula, installation, preparation, assembly, testing, packaging, labeling, sale, use or consumption of any product, the failure to warn or protect against a danger or hazard in the use or misuse of the product or the failure to provide proper instructions for the use or consumption of any product.

(Emphasis added.)

**3.** Section 12–551 provides:

> A product liability action as defined in § 12–681 shall be commenced and prosecuted within the period prescribed in § 12–542 [two years], except that no product liability action

may be commenced and prosecuted if the cause of action accrues more than twelve years after the product was first sold for use or consumption, unless the cause of action is based upon the negligence of the manufacturer or seller or a breach of an express warranty provided by the manufacturer or seller.

We note that the last clause of the statute is an exception only to the twelve-year repose provision and not to the application of the two-year limitations period generally. *Bryant v. Continental Conveyor Equipment Co.*, 156 Ariz. 193, 195, 751 P.2d 509, 511 (1988); *Kellogg v. Willy's Motors Inc.*, 140 Ariz. 67, 69–70, 680 P.2d 203, 205–06 (Ct.App.1984) (the last clause of the statute is the "exception to the exception").

**4.** On United's cross-appeal, the court of appeals also affirmed the trial court's denial of United's claim for reasonable attorneys' fees. United does not cross-petition for review on this issue.

*v. LaBelle's Distributing of Arizona, Inc.,* 147 Ariz. 23, 708 P.2d 114 (Ct.App.1985), the court construed Drew's complaint as one against a "manufacturer" or "seller" for "property damage" arising from the use of the feeds, and, thus, was a products liability action within a literal reading of A.R.S. § 12–681(3). The court refused to accept Drew's contention that the complaint was broad enough to permit recovery of economic damages resulting from his inability to market the ill-affected feeder pigs. Insisting that the complaint must state *only* a claim for economic or commercial losses, the court found in the complaint only an allegation for damage visited upon Drew's property—the pigs.

The appellate court also affirmed the dismissal of the racketeering claim because of a technical failure to state a claim. Citing *State ex rel. Corbin v. Pickrell,* 136 Ariz. 589, 594–95, 667 P.2d 1304, 1309–10 (1983) (describing proper pleading under A.R.S. § 13–2301(D)(4)(s)), the court held that Drew's complaint failed to allege that United utilized a scheme or artifice to defraud for purposes of financial gain, and did not allege that United's acts were felonious. It does not appear from the record that United argued this particular point to the trial court as a basis for dismissal.[5] Apparently, the trial court dismissed the complaint in toto on statute of limitations grounds.

## DISCUSSION

The *Gates* court defined a products liability claim as

> any claim which is: (1) brought against a manufacturer or seller of a product, (2) for damages for bodily injury, death, or property damage, (3) caused by or resulting from the manufacture, construction, design, etc. The limitation provided by the above statute does not distinguish between actions based on differing legal theories [footnote omitted], but rather focuses on the nature of the damages sought. *All* actions which satisfy the three elements delineated in A.R.S.

§ 12–681 are subject to the two year statute of limitations contained in A.R.S. § 12–542, regardless of whether they are otherwise couched in tort or contract language.

147 Ariz. at 24, 708 P.2d at 115 (emphasis in original). We agree the statute defines a products liability action by reference to the nature of the damages the plaintiff seeks in his complaint. The statute, however, does not require the complaint to state only a claim for economic or commercial losses before the complaint falls outside the statute's scope. Nevertheless, the court of appeals not only failed to appreciate that the complaint seeks damages for economic losses, but also required that Drew's complaint must state *solely* a cause of action for economic losses. *See Drew,* memo. decision at 8.

### A. The claim for economic damages

Although the complaint is broad enough that it may fairly be read to include by implication a claim for property damage, it also clearly implies damages for lost profits. The complaint describes no tortious act. It contains neither negligence nor strict liability allegations. It does allege breach of contract and express and implied warranties. It also expressly alleges that a feeder pig operation's profitability is based on the number of pigs produced by each sow and fairly implies that the improper feed impaired Drew's ability to market some feeder pigs. Ours is a notice pleading jurisdiction, *Arizona Department of Revenue v. Transamerica Title Insurance Co.,* 124 Ariz. 417, 423, 604 P.2d 1128, 1134 (1979), and does not require the use of "magic words" such as "economic loss." *See Saide v. Stanton,* 135 Ariz. 76, 78, 659 P.2d 35, 37 (1983). Because economic damages in the form of lost profits usually are the "direct and natural result of a breach of contract," the lost profits need not have been specifically pleaded in this breach of contract complaint. *See Myers v. Stephens,* 233 Cal.App.2d 104, 121, 43 Cal. Rptr. 420, 433 (1965). Even in tort cases in

---

5. United's answer, by way of general allegation, raises the affirmative defense that all of Drew's claims failed to state a cause of action.

those jurisdictions requiring special allegations before lost profits may be recovered, lost profits that are the "natural, necessary and logical" result of the defendant's actions, need not be specifically pleaded. *Rusk Farms, Inc. v. Ralston Purina Inc.,* 689 S.W.2d 671, 681 (Mo.App.1985); *cf.* Rule 9(g), Ariz.R.Civ.P., 16 A.R.S. (requiring specific pleading of special damages).

Under the broad allegations of the complaint, Drew would have been entitled to recover the economic loss sustained by his feeder pig operation as a result of United's breach of contractual warranties. We hold that Drew's complaint sufficiently states a claim for economic damages from breach of contract.

### B. Coexistent causes of action

The court of appeals required Drew's complaint to "yield only a claim for economic loss." Memo. decision at 8. Drew claims this is incorrect.

The products liability statute, A.R.S. § 12–681, applies only to claims seeking recovery for property damage and personal injury or death—essentially tort damages. *Gates,* 147 Ariz. at 24, 708 P.2d at 115. It is irrelevant under which theory of liability (*e.g.,* strict liability, breach of warranty, negligence, etc.) the plaintiff seeks those damages. *Id.; see also Kellogg v. Willy's Motors, Inc.,* 140 Ariz. 67, 70, 680 P.2d 203, 206 (Ct.App.1984). However, the statute does not apply to claims for commercial or economic losses. *Gates,* 147 Ariz. at 24, 708 P.2d at 115. Thus, to the extent Drew seeks compensation for economic damages to his business, the products liability statute, by its own terms, cannot control and its two-year statute of limitations is inapplicable.

Our reading of the products liability statute reveals no indication that a complaint arguably seeking both personal injury or property damages as well as purely economic or commercial damages is entirely time barred by A.R.S. § 12–542. Read that way, the statute would subsume *all* claims for relief against sellers or manufacturers within the short two-year tort limitations period, and impliedly repeal all other statutes of limitations governing other claims for relief. The products liability statute does not state such an "all or nothing" approach; it only operates on that aspect of any complaint seeking damages to property or person and otherwise meeting the requirements found in § 12–681(3).

We are cited to no authority that supports the proposition that by enacting the products liability statute the legislature intended to repeal or diminish the rights or remedies provided by the UCC. Absent any contrary expression, we assume the legislature intended to leave intact a uniform code governing commerce. *See Green v. Bock Laundry Machine Co.,* — U.S. —, —, 109 S.Ct. 1981, 1984, 104 L.Ed.2d 557 (1989) (Scalia, J., concurring) (in the absence of contrary indications, courts must assume the legislature intends to enact new statutes compatible with existing statutes).

Thus, we do not imply such fundamental, *sub silentio* changes in statutory rights from the language of later statutes targeted at other fields and other problems. Because Drew does not seek such damages, however, we need not resolve this apparent conflict between the two statutes of limitations. Drew pleads a wrong recognized by the UCC (breach of express and implied warranty, *see* A.R.S. § 47–2313 through § 47–2315) and seeks economic damages provided by the UCC for that wrong (*see* A.R.S. §§ 47–2714 and 47–2715), he, therefore, seeks relief under the UCC and that portion of his claim is governed by the statute of limitations found in the UCC.[6]

**6.** We recognize that A.R.S. § 47–2715(B)(2) also authorizes recovery for personal injury or property damage. Nonetheless, because the legislature drew the products liability statute with a broad brush, any relief for these types of injuries may be subject to the products liability statute's two-year limitations period rather than the UCC's four-year statute. However, because Drew expressly disclaims seeking recovery for property damage, we need not decide this issue. *But see* A.R.S. § 12–551 (suggesting the legislature's intent to include pure breach of warranty actions within products liability statute).

Likewise, we do not decide which statute of limitations applies if a plaintiff seeks contract damages for injury to his property that was the

Seeking two types of relief, contract and tort, in the same complaint is proper. *See Woodward v. Chirco Construction,* 141 Ariz. 514, 516, 687 P.2d 1269, 1271 (1984). A single complaint may be based exclusively on tort or contract law principles, or it may rest on some combination of the two. *Salt River Project v. Westinghouse Electric Corp.,* 143 Ariz. 368, 380, 694 P.2d 198, 210 (1984). "Each *claim* [for relief] will stand or fall on its own [and] a distinct statute of limitations applies to each." *Woodward,* 141 Ariz. at 516, 687 P.2d at 1271 (emphasis added).

Disclaiming any attempt to recover the value of any piglet that died, Drew argues that his claim for the lost profits of his business is a UCC claim. We agree.[7] Accordingly, because the products liability limitations period does not apply to his claim for lost profits, that aspect of his complaint is not time barred. Drew may seek relief for whatever damages are cognizable under the UCC, but he may not be granted relief for any claim for tort damage, whether it be personal injury or property damage.

Therefore, we hold that A.R.S. § 12–681, with its adopted two-year limitations period, only applies to those aspects of a complaint meeting the requirements of § 12–681. The statute does not require dismissal of an entire complaint on limitations grounds simply because the complaint also seeks recovery for property damage or personal injury. For economic loss, such as damage to his business, the plaintiff retains the right to the economic remedies provided by the UCC. Anything in *Gates* to the contrary is disapproved.

subject of contract. *Compare* A.R.S. § 12–681(3) (products liability actions include actions for property damage) *with* A.R.S. § 47–2712 (awarding as contract damages the "cover" cost of substitute goods); *see Salt River Project v. Westinghouse Electric Corp.,* 143 Ariz. 368, 378–79, 694 P.2d 198, 208–09 (1984); *Gates,* 147 Ariz. at 25, 708 P.2d at 116; *Arrow Leasing Corp. v. Cummins Arizona Diesel,* 136 Ariz. 444, 447–49, 666 P.2d 544, 547–49 (Ct.App.1983).

**7.** It is unnecessary to apply *Salt River Project's* three-step analysis to determine whether Drew's claim is a contract claim or tort claim. *See Salt*

## C. The racketeering claim

The court of appeals recognized that even if Drew's complaint sought relief for property damage, the racketeering count was not time barred by the products liability two-year statute of limitations. Instead, the seven-year statute of limitations found in A.R.S. § 13–2314(H) applies. *See* memo. decision at 10. The court of appeals, however, affirmed the dismissal of the racketeering claim because the complaint did not allege a motive for pecuniary gain and felonious conduct. *Id.* at 11 (citing *Pickrell,* 136 Ariz. at 594–95, 667 P.2d at 1309–10).

Our review of the record shows that the trial judge dismissed the racketeering claim for the same reason he dismissed the breach of warranty claims—because the two-year limitations period on products liability actions expired. Focusing on the technical requirements for pleading a racketeering claim, the court of appeals evidently seized on an issue not argued in the trial court. To whatever extent the racketeering claim was deficiently pleaded, Drew still had ample time to amend the complaint if the pleading issue had been raised in the trial court. *See generally,* Rule 15, Ariz.R. Civ.P., 16 A.R.S. We do not believe it proper for an appellate court to affirm a dismissal on grounds pertaining to the technical sufficiency of the pleadings when such grounds had not been argued in the trial court and the insufficiency may have been cured if the problem had been properly and timely raised. *See* Rules 1 and 15(a)(1), Ariz.R.Civ.P., 16 A.R.S.

## DISPOSITION

We vacate the memorandum decision of the court of appeals. The trial court erred

*River Project,* 143 Ariz. at 376, 380, 694 P.2d at 206, 210. *Salt River Project* was concerned with whether a tort claim could exist in conjunction with a UCC claim in a commercial setting. *See id.* at 380, 694 P.2d at 210. Because Drew disclaims seeking recovery for property damage—the injury or death of his pigs—and seeks only his UCC economic remedies—such as recovery for damage to his business—to apply the *Salt River Project* test and determine if in fact Drew does have a tort cause of action would be an academic exercise. His tort claim, if any, is waived.

by dismissing the complaint; we reverse the judgment and remand this matter to the trial court for further proceedings consistent with this opinion. To the extent *Gates v. LaBelle's* is inconsistent with this opinion, it is disapproved.

GORDON, C.J., and CAMERON, MOELLER and CORCORAN, JJ.